IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

JOEL SNIDER,  :
               Plaintiff  :  No. 4:13cv1226
  :
Vs.  :  Honorable Matthew W. Brann
  :
WARDEN JACQUELINE MOTTER,  :  (Electronically Filed)
et al.,  :
           Defendants  :

**DEFENDANT CLINTON COUNTY CORRECTIONAL FACILITY'S
BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR
PARTIAL SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56**

## I.  STATEMENT OF THE CASE

### PROCEDURAL HISTORY

The relevant procedural history pertaining to this Motion for Summary

Judgment or Partial Summary Judgment is as follows:

On December 19, 2015, Plaintiff Joel Snider (Snider) filed a Second

Amended Complaint against Defendants Clinton County Correctional Facility

(CCCF), Warden Jacqueline Motter (Warden Motter), Lieutenant Adam Smith

(Lieutenant Smith), Officer Ronald Nolte (Officer Nolte), Officer Michael Shearer

(Officer Shearer), Officer Nathan Goshorn (Officer Goshorn), Officer Adam

Grimes (Officer Grimes), Officer William Gray (Officer Gray), Officer Tyler

1

Walker (Officer Walker), Officer Darby Hughes (Officer Hughes) and Officer

Joshua Richard (Officer Richard) (collectively Corrections Defendants), Nurse

Andrus, Nurse Rupert and Nurse McGill (collectively Medical Defendants)

On August 11, 2016, the CCCF filed an Answer with Affirmative Defenses.

The parties have engaged in discovery, to include serving requests for

production of documents on each other and responses thereto and taking

depositions of each other.

On December 1, 2016, Magistrate Judge Susan E. Schwab issued a Third

Amended Case Management Order setting the following deadlines: (1) close of

fact discovery – January 23, 2017 (subsequently extended to February 6, 2017), (2)

service of expert reports by the Plaintiff – February 21, 2017 and (3) dispositive

motions and supporting briefs – March 20, 2017.

On March 20, 2017, the CCCF filed this Motion for Summary Judgment or

Partial Summary Judgment, which is presently before the Court for disposition.

**FACTUAL HISTORY**

The relevant factual history pertaining to this Motion for Summary

Judgment or Partial Summary Judgment is set forth in the Statement of Material

Facts filed contemporaneously with this motion.

## II.  QUSTIONS PRESENTED

A.  WHETHER THE CCCF IS ENTITLED TO SUMMARY
JUDGMENT IN ITS FAVOR ON SNIDER'S ADA CLAIM BASED
UPON IT'S ALLEGED DISCRIMINATION AGAINST HIM IN
THE DISCIPLINARY PROCESS?

B.  WHETHER THE CCCF IS ENTITLED TO SUMMARY
JUDGMENT IN ITS FAVOR ON SNIDER'S ADA CLAIMS
BASED UPON IT'S ALLEGED DISCRIMINATION AGAINST
HIM AND / OR DENIAL OF PROGRAMS AND SERVICES,TO
INCLUDE ATTENDANCE AT RELIGIOUS SERVICES, USE OF
THE LAW LIBRARY AND PARTICIPATION IN THE
DISCIPLINARY HEARING PROCESS?

## III.  ARGUMENT

### STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides that upon motion of a party the

Court may grant summary judgment, when appropriate, as to certain claims, issues

or facts.  The standard to be applied is as follows:

> A motion for summary judgment may be granted "if the pleadings,
> depositions, answers to interrogatories, and admissions on file, together with
> affidavits, if any, show that there is no genuine issue as to any material fact
> and that the moving party is entitled to a judgment as a matter of law."
> Fed.R.Civ.P. 56(c). It is the duty of the movant to establish that the record
> demonstrates an "absence of a genuine issue of material fact." *Celotex Corp.
> v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265, 274
> (1986).

> "The substantive law [identifies] which facts are material. Only disputes
> over facts that might affect the outcome of the suit under the governing law
> properly preclude the entry of summary judgment. Factual disputes that are
> irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby,
> Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 211 (1986).
> As to the genuineness of an issue of material fact, an issue is genuine "if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 212,

The non-movant can defeat a motion for summary judgment provided that he produces "affirmative evidence" beyond the content of his pleadings that demonstrates the existence of a genuine issue of material fact that remains for trial.[1] *Saldana v. Kmart Corp.,* 260 F.3d 228, 232 (3d Cir.2001). "Such affirmative evidence-regardless of whether it is direct or circumstantial-must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Id.* (citing *Williams v. Borough of West Chester,* 891 F.2d 458, 460-461 (3d Cir.1989)).

In reviewing a motion for summary judgment, the Court is obligated to "view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Andreoli v. Gates,* 482 F.3d 641, 647 (3d Cir.2007).

**DISCUSSION**

In Count V of the Second Amended Complaint, Snider asserts a claim under

Title II of the ADA[2] against the CCCF contending that it discriminated against him

and failed to provide him with reasonable accommodations for his disability,

---

[1] Such evidence must be *competent* evidence, i.e. evidence as would be admissible at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Williams v. Borough of W. Chester, Pa.,* 891 F.2d 458, 467 (3d Cir. 1989)

[2] Title II of the ADA (42 U.S.C. 12132) provides as follows:

"Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

causing him to be excluded from participation in programs and denied services of the CCCF.

Title II of the ADA prohibits a public entity from excluding an individual from participation in or denying him or her benefits of its services, programs, or activities by reason of his or her disability or otherwise subjecting an individual to discrimination by reason of his or her disability.  These prohibitions are not interdependent and discrimination may occur regardless of whether an individual is excluded from participation in or denied benefits of a public entity's services, programs, or activities.  *Chisholm v. McManimon,* 275 F.3d 315 (3d Cir. 2001).

### THE CCCF IS ENTITLED TO SUMMARY JUDGMENT IN ITS FAVOR ON SNIDER'S ADA CLAIM BASED UPON IT'S ALLEGED DISCRIMINATION AGAINST HIM IN THE DISCIPLINARY PROCESS?

To establish a violation of Title II of the ADA, Snider must prove that: (1) he is a qualified individual with a disability; (2) he was either excluded from participating in, or denied the benefit of, a public entity's services, programs or activities or was otherwise discriminated against; and that (3) such exclusion, denial of benefits or discrimination was by reason of his disability.  42 U.S.C. 12132; *Maresca v. Blue Ridge Communications,* 2010 WL 407127, (3d Cir., 2010).

For the purpose of this Motion for Summary Judgment or Partial Summary Judgment only the CCCF does not dispute that Snider is a qualified person with a disability or that it is a public entity subject to Title II of the ADA.  Rather, it

contends that Snider has failed to produce evidence of record sufficient to show that he was either excluded from participating in or denied the benefit of the CCCF's services, programs or activities or was otherwise subject to discrimination by reason of his disability.

Snider contends that the CCCF violated Title II of the ADA in two ways. First, he asserts that it discriminated against him by failing to make reasonable accommodations for his disability in the disciplinary process, i.e. failing to take his disability into consideration when deciding whether and how to discipline him for breaches of its rules, regulations, policies and procedures and whether to use physical force against him.[3] As set forth in more detail in the CCCF's Statement of Material Facts Snider was the subject of disciplinary action on two occasions.

As to the first, on February 28, 2013 Defendant Corrections Officer Ronald Nolte (Nolte) filed a misconduct charge (#394) against Snider for violations of the CCCF's policies and procedures, to include disobeying verbal orders from staff, disorderly conduct and disrupting normal routine.  As a result of said misconduct charge, Defendant Lieutenant Adam Smith (Smith) ordered that Snider be removed from his cell and transferred to L Block, the Administrative Housing Unit, pending a misconduct hearing.  Snider was handcuffed and shackled by Defendants

---

[3] Being free from receiving misconducts or discipline as the result of misconducts is not a service, program or activity and cannot from the basis for an ADA claim. *Spencer v. Courtier,* 522 Fed. Appx. 1221 (3rd Cir. 2014); *Scherer v. Pennsylvania Department of Corrections,* 2007 WL 411412 (W.D.PA. 2007).

Corrections Officers Tyler Walker (Walker) and Joshua Richard (Richard) and transported to L Block. During the transport, a struggle ensued resulting in Snider being carried / dragged by his arms to L Block. Following a misconduct hearing held on March 4, 2013, Snider was found guilty of some of the misconducts and given five days of Disciplinary Segregation.

As to the second, on April 5, 2013 Defendant Corrections Officer Shearer (Shearer) filed two misconducts against Snider for violations of the CCCF's policies and procedures, to include (#608) disobeying written or verbal orders from staff, disorderly conduct, threatening or abusive language, disrupting normal routine and insolence or disrespect to staff and (#609) disobeying written or verbal orders from staff, destruction of county property, disorderly conduct, and disrupting normal routine. As a result of said misconduct charges, Lt. Smith ordered that Snider be removed from his cell and transferred to L Block, the Administrative Housing Unit, pending a misconduct hearing. Snider refused to come to the door of his cell to be handcuffed in preparation for his transport to L Block. As a result, a team of six Corrections Officers was formed to extract Snider from his cell and transport him to L Block. During the cell extraction, the Corrections Officers sprayed Snider with pepper spray, struggled with him to handcuff and shackle him and carried him to L Block. Following a misconduct

hearing held on April 10, 2013, Snider was found guilty of some of the misconducts and given five (5) days of Disciplinary Segregation.

As the evidence of record shows, the CCCF treated Snider in accordance with its rules, regulations, policies and procedures governing its disciplinary process as it would any other inmate. Of course, this doesn't end the inquiry. Under the ADA a public entity may discriminate against an individual when it fails to make reasonable accommodation for his disability by failing to make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability. 28 C.F.R. § 35.130(b)(7).

Initially, the CCCF submits that the ADA does not require that any discipline imposed on an inmate with a mental illness be a measured imposition of discipline in light of his mental illness. Placement of an inmate with a mental illness in a restricted housing unit for disciplinary reasons does not establish discrimination under the ADA. *Palokovic v. Wetzel*, 2015 WL 3937499 (W.D.PA 2015); *Scherer v. Pennsylvania Department of Corrections,* 2007 WL 411412 (W.D.PA. 2007).

Further, the CCCF submits that the evidence of record fails to establish all essential elements of a failure to make reasonable accommodations claim. First, the evidence of record does not show that Snider ever requested any

8

accommodations in the disciplinary process. While a specific request for such accommodations is not necessary when the need is obvious, such a need was not obvious under the circumstances of the present case. A corrections officer, a non-mental health professional, cannot be expected to know and understand the complexities of an inmate's mental illness, to determine whether his conduct which violated the CCCF's rules, regulations, policies and procedures was caused by his mental illness and to determine whether filing a misconduct against the inmate and proceeding through the disciplinary process would adversely affect the inmate's mental illness.

Second, Snider has not produced any competent lay testimony or proposed expert testimony to show that his conduct which formed the basis of the misconducts filed against him was caused by his mental illness. The evidence of record shows that he was disciplined because of his misconduct and not because of his mental illness.

Third, Snider has not produced any competent lay testimony or proposed expert testimony to show that the CCCF's decision to discipline him and use physical force against him had or would have had any adverse effect on his mental illness. Thus, Snider has not shown that it was reasonable or necessary for the CCCF to make any modifications in its policies, practices, or procedures to avoid

discrimination against him on the basis of disability under the circumstances of the present case.

At most, Snider has presented a theory that the CCCF should have accommodated him in an unspecified way in the disciplinary process because he had a mental illness. This alone is insufficient to establish a claim under the ADA. *Palokovic v. Wetzel.* Snider has not produced any evidence of record, especially no proposed expert testimony, to show if and what accommodations would have been reasonable and necessary to avoid discrimination against him on the basis of his mental disability and that the CCCF's pursuit of disciplinary proceedings actually had any adverse effect on his mental disability.

For the foregoing reasons, the Second Amended Complaint fails to state a claim under Title II of the ADA against the CCCF and the Second Amended Complaint should be dismissed as to it.

**THE CCCF IS ENTITLED TO SUMMARY JUDGMENT IN ITS FAVOR ON SNIDER'S ADA CLAIMS BASED UPON IT'S ALLEGED DISCRIMINATION AGAINST HIM AND / OR DENIAL OF PROGRAMS AND SERVICES, TO INCLUDE ATTENDANCE AT RELIGIOUS SERVICES, USE OF THE LAW LIBRARY AND PARTICIPATION IN THE DISCIPLINARY HEARING PROCESS**

Second, Snider asserts that the CCCF discriminated against him by excluding him from or denying him certain programs and services, to include attendance at religious services, use of the law library and participation in the disciplinary hearing process due to his disability. As to attendance at religious

10

services and use of the law library, Snider believes that various corrections officers

would use his mental illness against him to deny him access to these programs or

services.  He believes these corrections officers would try to goad him into

violating the CCCF's rules, regulations, policies and procedures so that they could

file misconducts against him immediately prior to the time he was attend the

religious services or use the law library and, thus, to deny him access to these

programs or services.  Snider has presented no evidence of record, other than his

own speculation, that the corrections officers acted with this purpose in mind.

The CCCF submits that the evidence of record fails to establish any essential

elements of an ADA claim based upon the denial of these programs and services.

The evidence a non-moving party may rely on in opposing a motion for summary

judgment and the evidence the court may consider in ruling on it must be

competent evidence, i. e. evidence as would be admissible at trial. *Celotex Corp. v.*

*Catrett* Snider's belief as to the intent of the corrections officers is sheer

speculation, which is not admissible in evidence.  Furthermore, such evidence

must amount to more than a scintilla to oppose the motion.  In this instance,

Snider's evidence, even if admissible, would not meet this evidentiary standard.

As to participation in the disciplinary hearing process, Snider believes that

due to his mental illness he was not able to concentrate on the process, did not

know what to say or how to answer questions.  The evidence of record does not

show that Snider ever requested any accommodations or assistance in the disciplinary hearing process. While a specific request for such accommodations or assistance is not necessary when the need is obvious, such a need was not obvious under the circumstances of the present case. Further, the evidence of record does not show any accommodations were reasonable or necessary in that process or that Snider was denied meaningful participation in the disciplinary hearing process. A review of misconducts and disciplinary hearing documents for the misconducts filed against Snider shows that he participated in and presented a full and adequate defense in that process. See Exhibits 6, 10 & 11 in Attachments 3 and 4.

For the foregoing reasons, the Second Amended Complaint fails to state a claim under Title II of the ADA against the CCCF and the Second Amended Complaint should be dismissed as to it.

## IV. CONCLUSION

For the foregoing reasons, there is no genuine issue of material fact relevant to Snider's claim against the CCCF based upon an alleged violation of Title II of the ADA to be tried. The evidence of record fails to establish that Snider has established all essential elements of such a claim and the CCCF is entitled to judgment in its favor as to Count V of Snider's Second Amended Complaint as a matter of Law.

LEE, GREEN & REITER, INC.

s/Joseph P. Green, Esquire
Joseph P. Green, Esquire
PA ID #19238
115 East High Street
PO Box 179
Bellefonte, PA  16823
814-355-4769
Email:  clenhart@lmgrlaw.com
Attorney for Defendant
Clinton County Correctional Facility

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Defendant Clinton County

Correctional Facility's Brief in Support of Motion for Summary Jugment was

served via ECF, on the _____ day of March, 2017 addressed to the following:


John Ninosky, Esquire
Johnson, Duffie, Stewart & Weidner
301 Market Street
PO Box 109
Lemoyne, PA  17043-0109

Alexandra Morgan-Kurtz, Esquire
Pennsylvania Law Project
429 Forbes Avenue, Suite 800
Pittsburgh, PA  15219


s/Joseph P. Green
Joseph P. Green, Esquire