# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOEL SNIDER,

    Plaintiff.

v.

WARDEN JACQUELIN MOTTER, et al.,

    Defendants.

No. 4:13-CV-01226

(Judge Brann)

## MEMORANDUM OPINION

### MARCH 1, 2018

There are three motions for summary judgment pending before this Court—one filed by Kyrie Andrus, LPN, and Tiffany Rupert, LPN, one filed by the Clinton County Correctional Facility ("CCCF"), and one filed by Joel Snider. For the reasons that follow, the motions filed by Ms. Andrus, Ms. Rupert, and the CCCF will be granted, and the motion filed by Mr. Snider will be denied.

### I. Background and Procedural History[1]

Plaintiff Joel Snider was incarcerated at the CCCF as a pretrial detainee from December 6, 2012, through May 7, 2013.[2] At that time, he suffered from various mental illnesses.[3]

---

[1] When considering a motion for summary judgment, this Court considers undisputed facts, resolves factual disputes in favor of the non-moving party, and draws all reasonable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). For purposes of this section, the non-moving party is Mr. Snider.

On February 28, 2013, he was put into handcuffs and leg shackles in connection with a "shake down" at his cell.[4] In that restrained state, he was transported to another area of the prison; during transport, he fell down and was "tackled" by several corrections officers accompanying him.[5] As a consequence of the restraints and his fall, Mr. Snider suffered from "red marks on both wrists and both ankles"—which were also "swollen"—as well as "swelling in [his] hands and fingers."[6] Consequently, Mr. Snider was examined by Ms. Rupert.[7] During that examination, he told Ms. Rupert "that [his] neck was hurting[,] . . . [his] throat was hurting[,] . . . [his] wrists and ankles were hurting[,] . . . [and] that [his] left shoulder was hurting too."[8] Ms. Rupert did not, however, provide any treatment at that time.[9]

A little more than a month later, on April 5, 2013, Mr. Snider refused to submit to handcuffing in his cell.[10] Therefore, officers disabled him with pepper

---

[2] ECF No. 273 ¶ 1.
[3] ECF No. 265-2 (Deposition of Joel Snider) at 8-9.
[4] *Id.* at 62-63.
[5] *Id.* at 64-65.
[6] *Id.* at 73, 77.
[7] *Id.* at 70.
[8] *Id.* at 70-71.
[9] *Id.*
[10] *Id.* at 88-89.

spray, and forcibly restrained and extracted him from his cell.[11] The officers then allowed Mr. Snider to shower himself to ameliorate the effects of the spray.[12] As a consequence of the spray and forcible restraint and extraction, Mr. Snider developed "a big lump on the top of [his] head, a "really swollen" left arm," "redness [and] swelling" on his ankles, "swollen[-]shut" eyes, a "bruise or a black and blue area around [his] left eye," a "swollen" nose, and a "cut on [his] nose."[13]

Ms. Andrus and Ms. Rupert were both present during the extraction; Ms. Andrus examined Mr. Snider subsequent to it.[14] During that examination, Mr. Snider told Ms. Andrus that his "head hurt," his "forehead hurt," his "arms hurt," that his "left arm really hurt," that his "ankles hurt," that his "neck and [] left shoulder hurt," that his "nose hurt," that "the left side of [his] head hurt," and that his "hands and thumbs hurt."[15] He also told her that, as a result of the spray, his "skin was burning[,] . . . that everything was burning[,] . . . [and that the spray] had gone down onto [his] genitals and anus[,] and . . . was burning."[16] Ms. Andrus examined Mr. Snider, conducted a "push and pull" test on his wrist, concluded that

---

[11] *Id.* at 92-93.

[12] *Id.* at 97.

[13] *Id.* at 99-106.

[14] *Id.* at 99; ECF No. 265-13 (Deposition of Tiffany Rupert) at 46.

[15] ECF No. 265-2 at 99-100.

[16] *Id.*

Mr. Snider "had no problem or [complaint of] pain while" completing the "push and pull" test.[17] She provided no other treatment.[18]

On May 6, 2013, Mr. Snider initiated the instant suit against a host of defendants.[19] Count I of his Second Amended Complaint is a Fourteenth Amendment claim brought against the corrections officers involved in the February 28, 2013 incident; it argues that the officers' actions "were objectively unreasonable and . . . excessive in relation to any legitimate government purpose."[20] Count II is a similar claim, brought against those officers involved in the April 5, 2013 incident, including Lieutenant Adam Smith.[21] Count III is a Fourteenth Amendment claim brought against CCCF's warden, Jacqueline Motter; it argues that Ms. Motter "has enforced a policy or practice allowing the use of objectively unreasonable force in cell extractions against inmates with serious mental illness," such as Mr. Snider.[22] Count IV is an Eighth Amendment claim brought against Ms. Rupert and Ms. Andrus; it argues that the two nurses were "deliberately indifferent to Mr. Snider's serious medical needs arising out of the"

---

[17] ECF No. 265-28 (Joel Snider's Dispensary Card); ECF No. 265-12 (Deposition of Kyrie Andrus) at 43.

[18] *Id.*

[19] ECF No. 1.

[20] ECF No. 222 ¶¶ 123-24.

[21] *Id.* ¶¶ 129-30.

[22] *Id.* ¶¶ 127-28.

incidents on February 28 and April 5, 2013.[23]  Finally, Count V is an Americans with Disabilities Act ("ADA") claim brought against the CCCF; it argues that CCCF "failed to provide [Mr. Snider] with reasonable accommodations for his [mental] disability."[24]

On March 20, 2017, the parties filed three motions for summary judgment. Mr. Snider seeks judgment on Count II against Lieutenant Smith, Count III against Warden Motter, Count IV against Ms. Andrus and Ms. Rupert, and Count V against the CCCF;[25]  Ms. Andrus and Ms. Rupert seek judgment on Count IV in their favor.[26]  The CCCF seeks judgment on Count V in its favor.[27]  On December 5, 2017, Chief Magistrate Judge Susan E. Schwab issued a Report and Recommendation vis-à-vis those motions,[28] to which the parties have filed various objections.[29]

## II. Mr. Snider's and CCCF's Motions for Summary Judgment

Chief Magistrate Judge Schwab recommends denying Mr. Snider's motion in its entirety and granting the CCCF's motion on Count V.  Mr. Snider objects only to that portion of the Report and Recommendation that recommends a grant of

---

[23] *Id.* ¶¶ 129-30.

[24] *Id.* ¶¶ 131-33.

[25] ECF No. 262.

[26] ECF No. 255.

[27] ECF No. 258.

[28] ECF No. 285.

[29] ECF Nos. 291, 293.

summary judgment to CCCF on Count V; he argues, instead, that summary judgment should be granted in his favor on that count.

When a party does not object to a portion of a Magistrate Judge's Report and Recommendation, this Court "need only satisfy itself that there is no clear error on the face of the record [before] accept[ing]" it.[30] This Court has completed that review, determined that there is no such clear error, and will therefore adopt the portions of the Report and Recommendation that recommends denying summary judgment to Mr. Snider on Counts II and III.

When a party *does* object to portions of an Report and Recommendation, this Court must conduct a *de novo* review of those objected-to portions.[31] This Court has completed that review, determined that summary judgment should be granted to CCCF on Count V, and will adopt the portion of the Report and Recommendation doing so.

The Report and Recommendation recommends granting summary judgment to CCCF on Count V on the basis of an expired limitations period. It decides that Pennsylvania's two-year limitations period applies to this claim, not the federal four-year period; suggests that the two-year period should not be equitably tolled; notes that Mr. Snider's ADA claim against CCCF was brought outside the two-

---

[30] *Univac Dental Co. v. Dentsply Inter., Inc.*, 702 F. Supp. 2d 465, 469 (M.D. Pa. March 31, 2010).

[31] 28 U.C.S. § 636(b)(1).

year period; and concludes, therefore, that the ADA claim was untimely. This Court agrees with all parts of that analysis.

Mr. Snider's claim was not "made possible by a post-1990 enactment" to the ADA;[32] therefore, the state, not federal, limitations applies. In his complaint, Mr. Snider alleges that his "mental illness affects nearly every aspect of his daily life," and is not controlled "despite repeated increases to his medication."[33] Therefore, his claim does not need to rely on the post-1990 amendments to the ADA—*i.e.*, his claim would have been possible under the regimes enunciated in *Sutton v. United Air Lines, Inc.*[34] and *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*.[35]

Mr. Snider is also not entitled to equitable tolling of the two-year period under either the Pennsylvania or federal tolling standards. Regarding the Pennsylvania standard, he has argued neither application of the discovery rule nor fraud.[36] Regarding the federal standard, neither his mental illness[37] nor his motions for appointment of counsel[38] justify tolling.

---

[32] *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 370 (2004).

[33] ECF No. 222 ¶¶ 21, 24.

[34] 527 U.S. 471 (1999).

[35] 534 U.S. 184 (2002).

[36] *Crouse v. Cyclops Industries*, 560 Pa. 394, 403 (2000) ("The discovery rule is a judicially created device which tolls the running of the applicable statute of limitations until the point where the complaining party knows or reasonably should know that he has been injured and that his injury has been caused by another party's conduct."); *Aiivazoglou v. Drever Furnaces*, 613 A.2d 595, 598 (Pa. Super. Ct. 1992) ("absent fraud or its equivalent, judicial extensions of time are expressly prohibited by" Pennsylvania's Judicial Code).

[37] Although Mr. Snider may have been mentally ill, that did not stop him from filing a flurry of motions in this Court. *See, e.g.*, *Nara v. Frank*, 264 F.3d 310, 320 (3d Cir. 2001) ("mental

Mr. Snider's ADA claim accrued, at the latest, on May 7, 2013—the day he was transferred out of the CCCF. His ADA claim first appears in his Second Amended Complaint, filed on December 19, 2015. Because this claim was raised for the first time more than two years after it accrued, it is untimely. Consequently, this Court will grant summary judgment to CCCF on Count V of Mr. Snider's complaint and deny summary judgment to Mr. Snider on that count.

### III. Ms. Andrus and Ms. Rupert's Motion for Summary Judgment

#### A. Standard of Review

Summary judgment is granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[39] A dispute is "genuine if a reasonable trier-of-fact could find in favor of the non-movant," and "material if it could affect the outcome of the case."[40] To defeat a motion for summary judgment, then, the nonmoving party must point to evidence in the record that would allow a jury to rule in that party's

---

incompetence is not a *per se* reason to toll a statute of limitations . . . [r]ather, the alleged mental incompetence must somehow have affected the petitioner's ability to file a timely . . . petition."), *overruled on other grounds by Carey v. Saffold*, 536 U.S. 214 (2002).

[38] The Supreme Court has suggested that a pending motion for appointment of counsel might sometimes weigh in favor of equitable tolling, *Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 151 (1984), but it did not address a situation like the present one, where a litigant filed a plethora of such motions, *see, e.g.*, ECF No. 49 (denying Mr. Snider's *fifth* motion for appointment of counsel).

[39] Federal Rule of Civil Procedure 56(a).

[40] *Lichtenstein v. Univ. of Pittsburgh Medical Ctr.*, 691 F.3d 294, 300 (3rd Cir. 2012) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 252 (1986).

favor.[41] When deciding whether to grant summary judgment, a court should draw all reasonable inferences in favor of the non-moving party.[42]

### B. Eighth Amendment Deliberate Indifference Claim

The Eighth Amendment to the United States Constitution prohibits the infliction of "cruel and unusual punishment[]." The United States Supreme Court has interpreted this provision to prohibit "deliberate indifference to serious medical needs of prisoners."[43] To prevail on his claim against Ms. Rupert and Ms. Andrus, then, Mr. Snider must show (1) that he had a "serious" medical need, and (2) that the nurses were "deliberately indifferent" to that serious medical need. Unfortunately, Mr. Snider has not produced sufficient evidence for a jury to make either of those findings, and summary judgment on this claim will be granted in favor of Ms. Rupert and Ms. Andrus.

---

[41] Federal Rule of Civil Procedure 56(c)(1); *Liberty Lobby*, 477 U.S. at 249.

[42] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

[43] *Estelle v. Gamble*, 429 U.S. 97, 105 (1976).

Although Mr. Snider frames his claim against Ms. Rupert and Ms. Andrus as involving the Eighth Amendment, the United States Court of Appeals for the Third Circuit has indicated that such medical care claims brought by pretrial detainees—as opposed to convicted prisoners—are actually brought under the Due Process Clause. *Boring v. Kozakiewicz*, 833 F.2d 468, 471 (3d Cir. 1987). The Third Circuit, however, has analyzed pretrial detainees' claims under the same legal framework as convicted prisoners' claims. *See, e.g.*, *Natale v. Camden County Correctional Facility*, 318 F.3d 575, 581 (3d Cir. 2003). Therefore, this Court will do the same.

### 1. Whether Mr. Snider's Medical Needs Were "Serious"

The United States Court of Appeals for the Third Circuit has noted that "the concept of a serious medical need . . . has two components."[44] The first is that the condition "must be such that a failure to treat [it] can be expected to lead to substantial and unnecessary suffering, injury, or death." Second, the condition "must be one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."[45] Neither Mr. Snider's condition on February 28, 2013, nor his condition on April 5, 2013, meet either of these prongs.

On February 28, after being cuffed and shackled, and after falling down in that state, Mr. Snider had "red marks" on his ankles, and swelling in his wrists, ankles, hands, and fingers. He told Ms. Rupert that various parts of his body were "hurting." Although clearly in pain, there is no evidence that Mr. Snider's condition was such that failure to treat it at that time would lead to "substantial and unnecessary suffering, injury, or death." Additionally, he had no physician-diagnosed condition, nor were his symptoms and complaints so "obvious that a lay person would easily recognize the necessity for a doctor's attention." While unpleasant, his "red marks" and swelling could only be interpreted as temporary

---

[44] *Colburn v. Upper Darby Tp.*, 946 F.2d 1017, 1023 (3d Cir. 1991).

[45] *Id.*

effects of the cuffs and shackles, his "hurting" an additional, disagreeable accompaniment.

On April 5, after being pepper sprayed and forcibly restrained and extracted from his cell, he had various bruising, swelling, and abrasions. He complained that various parts of his body "hurt" or "really hurt," and that his skin was "burning" after the spray and shower. Again, this Court cannot interpret Mr. Snider's condition as one that would lead to "substantial and unnecessary suffering, injury, or death." And it was neither physician-diagnosed, nor obviously in need of a physician's attention. Again, while clearly in pain, the evidence at that time can only be interpreted as showing that Mr. Snider was suffering unfortunate—but likely self-limiting—consequences of the altercation in his cell.

Mr. Snider, therefore, cannot show that his medical needs on February 28 and April 5, 2013, were "serious."

### 2. Whether Ms. Rupert or Ms. Andrus Were Deliberately Indifferent to Mr. Snider's Medical Needs

Even if Mr. Snider could prove the necessary "serious medical need," he would still have to show that Ms. Andrus and Ms. Rupert were "deliberately indifferent" to that need. The Third Circuit has noted that "deliberate indifference" require more than "[a]llegations of medical malpractice."[46] As a initial matter, there is a "presum[ption] that [any] treatment [provided to] a prisoner is proper

---

[46] *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004).

absent evidence that it violates professional standards of care."[47] Even with such evidence, however, a plaintiff must also show that a defendant acted with "obduracy and wantonness," or with "recklessness or a conscious disregard of a serious risk";[48] in other words, there must be evidence from which a jury could find that any "delay or denial [of care] was motivated by non-medical factors."[49]

Mr. Snider has not produced any evidence from which a jury could find that either Ms. Andrus or Ms. Rupert acted with "deliberate indifference." First, Mr. Snider was examined after both incidents, and he has provided no evidence that the nurses' decision to provide limited care after those examinations fell below any professional standard of care.[50] Second, Mr. Snider points to no evidence in the record that could sustain a finding that the nurses subjectively acted with "obduracy and wantonness" or "recklessness or a conscious disregard of a serious risk," or that the nurses were "motivated by non-medical factors."

Mr. Snider, therefore, cannot show that Ms. Andrus and Ms. Rupert acted with "deliberate indifference" to his medical needs on February 28 or April 5, 2013. Because he also cannot show a "serious medical need," see *supra*, this Court

---

[47] *Pearson v. Prison Health Service*, 850 F.3d 526, 535 (3d Cir. 2017).

[48] *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

[49] *Pearson,* 850 F.3d at 537 (3d Cir. 2017).

[50] Because he was examined by the nurses, Mr. Snider cannot claim that there was a "complete denial of medical care." *Pearson*, 850 F.3d at 535 (3d Cir. 2017); *id.* at 538-39 ("[W]hile [the plaintiff] claims that [the nurse] delayed or denied him medical care, it is undisputed that she examined him, diagnosed him with a pulled muscle, and decided not to elevate his condition based on her opinion that it was not severe. Thus, his claim against her is one that she inadequately diagnosed and treated his medical condition.")

will grant the nurses' motion for summary judgment on Count IV of Mr. Snider's compliant.[51]

## III. CONCLUSION

For the reasons discussed above, this Court will deny Mr. Snider's motion for summary judgment but grant summary judgment to Ms. Andrus, Ms. Rupert, and the CCCF. An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge

---

[51] Consequently, this Court will reject that portion of the R&R that recommends denying Ms. Andrus and Ms. Rupert's motion for summary judgment.